UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JONATHAN KYLE LEWIS,

             Plaintiff,

v.                                  Case No:  2:10-cv-547-Ftm-29DNF

SECRETARY, DOC and JOHN E.
POTTER,

             Defendants.

_____/

## OPINION AND ORDER

This matter comes before the Court upon review of the file. Jonathan Kyle Lewis ("Plaintiff"), a prisoner currently confined at Florida State Prison in Raiford, Florida, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1, filed September 3, 2010). Plaintiff's Third Amended Complaint is presently before the Court (Doc. 95, filed October 3, 2012). Plaintiff's Third Amended Complaint relates to events surrounding the distribution and collection of mail at Charlotte Correctional Institution in Charlotte County, Florida. Plaintiff names Michael D. Crews, Secretary of the Florida Department of Corrections ("Defendant Secretary") and John E. Potter, Postmaster General ("Defendant Postmaster") as defendants.

Defendant Secretary has filed a motion to dismiss Plaintiff's Third Amended Complaint in its entirety for failure

to state a claim.   Plaintiff has not filed a response to the motion, despite being granted one extension of time in which to do so.[1]   The motion is ripe for review.

## I.   LEGAL STANDARDS

### a.   *Standard of review for a motion to dismiss*

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004).   Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").   However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

---

[1] Plaintiff sought additional extensions of time to respond, arguing that he wished to wait until Defendant Postmaster filed his own motion to dismiss before responding (Doc. 171).   In denying Plaintiff's motion, the Court noted that Plaintiff had filed numerous other pleadings during the time he had to respond and that there was no guarantee that Defendant Postmaster would file a motion to dismiss (Doc. 172).   Even so, the Court granted a two-week extension, and Plaintiff was cautioned that no further extensions would be granted. <u>Id.</u>

> action will not do. Factual allegations must
> be enough to raise a right to relief above
> the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 54491 U.S. 585 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers. Hughes v. Rowe, 449 U.S. 5, 9 (1980).

### b.   *Standards under 28 U.S.C. § 1915A*

Because Plaintiff filed this action against a governmental entity and employees of a governmental entity while incarcerated, the Court is required to screen his action under 28 U.S.C. § 1915A(b). Section 1915A provides that:

> The court shall review . . . a complaint in
> a civil action in which a prisoner seeks
> redress from a governmental entity or
> officer or employee of a governmental
> entity. . . . On review, the court shall . .
> . dismiss the complaint, or any portion of
> the complaint, if the complaint is
> frivolous, malicious, or fails to state a
> claim upon which relief may be granted; or
> seeks monetary relief from a defendant who
> is immune from such relief.

28 U.S.C. § 1915A(a), (b)(1) & (2). Section 1915A requires that prisoner complaints be screened in the same manner as under § 1915(e)(2)(B) regardless of whether the filing fee has been paid. Martin v. Scott, 156 F.3d 578, 579 (5th Cir.

1998)(recognizing that § 1915A "applies to any suit by a prisoner against certain government officials or entities regardless of whether that prisoner is or is not proceeding IFP."). In essence, § 1915A is a screening process to be applied *sua sponte* and at any time during the proceedings.

The phrase "fails to state a claim upon which relief may be granted" has the same meaning as the nearly identical phrase in Federal Rule of Civil Procedure 12(b)(6). Therefore, the standards that apply to a dismissal under Fed. R. Civ. P. 12(b)(6) apply to a dismissal under § 1915A(b)(1). See Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1278-79 (11th Cir. 2001)(noting that the language in § 1915A(b)(1) mirrors the language in 28 U.S.C. § 1915(e)(2)(B)(ii), which tracks the language in Rule 12(b)(6)).

## II.  BACKGROUND

### a.  *Procedural History*

Plaintiff initiated this action by filing a complaint with this Court on September 3, 2010 (Doc. 1). Plaintiff did not proceed *in forma pauperis* and paid his filing fee on September 20, 2010. Plaintiff filed an amended complaint on March 11, 2011 (Doc. 56). Plaintiff filed his second amended complaint on June 13, 2011 (Doc. 62). Plaintiff filed a third amended complaint on October 3, 2012 (Doc. 95).

4

On July 29, 2013, Defendant Secretary filed a motion to dismiss Plaintiff's Third Amended Complaint (Doc. 145).  In the motion, Defendant Secretary argued, *inter alia*, that the Third Amended Complaint should be dismissed because Plaintiff had not fully disclosed his litigation history (Doc. 145 at 15).  On August 6, 2013, the Court ordered Plaintiff to show cause why his Third Amended Complaint should not be dismissed for his failure to reveal his prior litigation history (Doc. 168). Plaintiff did not respond to the Court's show cause order.

Plaintiff was ordered to respond to Defendant Secretary's motion to dismiss by August 20, 2013 (Doc. 145).  The time for Plaintiff's response was extended until September 3, 2013, and in the order granting the extension, Plaintiff was warned that no further extensions of time to file a response would be granted (Doc. 172).  Plaintiff did not file a response to Defendant Secretary's motion to dismiss, instead filing twenty-four unrelated "Affidavits of Jonathan Lewis" or "Notic[es] to the Court". (Docs. 147-165, 175-179.)

b.   *Complaint*[2]

In his third amended complaint, Plaintiff alleges that he has sent several complaints to the Postmaster General over the years alleging that state officials "constantly violate [his] mail" in violation of his right to association (Doc. 95 at ¶ 2). Plaintiff alleges that he has spoken to several other inmates who assert that these violations have been ongoing "for years."

---

[2] The facts, as alleged in the Third Amended Complaint are accepted as true. However, the complaint is disjointed, with certain paragraphs presenting an incoherent and jumbled narrative that fails to articulate specific acts by the defendants that Plaintiff believes give rise to constitutional violations. For example, paragraph 19 alleges in its entirety:

> The time is each prison on the shift routine mail and publications is passed out and when routine mail is picked up by the officers and the place is Okeechobee CI, Charlotte CI, Florida State Prison, and Union CI and the date is each day at each prison when mail and publications is dealt with by the mailroom of the officers and each prison has the shift this happens and the mailroom is there on the administrative shift which is at Okeechobee CI 6am to 2pm and Charlotte CI 7am to 3pm and Florida State Prison 8am to 4pm and Union CI 8am to 4pm and the mail is picked at Okeechobee on the 2pm to 10pm shift and Charlotte CI 3pm to 11pm and Florida State prison and Union CI 8am to 4pm shift.

(Doc. 95 at ¶ 19.)   The Court will not speculate as to the constitutional violations Plaintiff is alleging in the incoherent portions of his Third Amended Complaint. Accordingly, to the extent Plaintiff intended to raise additional claims or allege additional facts not considered by the Court in this Order, such claims are dismissed pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1915A(b)(1).

Id. at ¶ 4.  Plaintiff has also read other lawsuits against the FDOC regarding mail service. Id. at ¶ 6.

Plaintiff asserts that the lack of "Code Title 39" protection for state inmate mail is a violation of his constitutional rights. Id. at ¶ 5. Specifically, Plaintiff alleges that Code 39 does not authorize "the state officials to assume the duties of the post office because the state officials don't know that they can go to jail for mail and publication violations that is on purpose in which resulted in ongoing mail and publications violations[.]" Id. at ¶ 7.

Plaintiff alleges that the officers at the prisons do not have authority to deal with incoming mail, and that his First Amendment rights are violated by the officers' handling of Plaintiff's incoming and outgoing mail (Doc. 95 at ¶¶ 8, 9, 11). Plaintiff also alleges that the FDOC improperly rejects or impounds mail, in violation of Plaintiff's First Amendment right to association. Id. at ¶ 10. Plaintiff asserts that "the state officials on several occasions at Charlotte CI and other prison I [sic] been to they are violating my mail and publications and there is nothing my snitching nigger ass can do about it because I can only send and receive what they let me." Id. at ¶ 30. Accordingly, Plaintiff asserts that the officers at the prisons should no longer be allowed to touch his mail. Id. at ¶ 13.

Plaintiff alleges that there is no paper trail for incoming and outgoing mail which is a violation of his First Amendment rights (Doc. 1 at ¶ 12).  Plaintiff also argues that his First Amendment rights are violated because "all mail needs to be opened in the presence of the inmate to prevent mail and publication theft and lies [about] inmates by employees[.]" Id. at ¶ 14.

Plaintiff asserts that the mailroom charges inmates for legal mail and for mail that is sent to Florida addresses (Doc. 95 at ¶¶ 15, 16).  Plaintiff alleges that "all legal and privilege[d] mail is suppose[d] to be sent on a list with a paper trail and this is a violation of my U.S. Constitution 1st Amendment right to association since I never receive the legal and privilege mail I sent out for." Id. at ¶ 17.

Plaintiff alleges that he has wasted money on stationary, pens, paper, envelopes, and stamps because the state officials throw his mail away.  Plaintiff also claims that state officials are "taking contents out of it then sending it out, putting foreign liquids on it, tearing the papers in the envelope, scratching my name off with a pen and putting another name on the letter/envelope at the Charlotte CI [.]" (Doc. 95 at ¶ 18).

Plaintiff asserts that the FDOC does not take mail and publication violations seriously, nor will they admit that it is a "real problem" so the officials continue to steal his mail and

publications (Doc. 95 at ¶ ¶ 23, 25).  Because there are no laws
to protect his mail, there is nothing to stop the officers from
abusing their power. Id. at ¶ 28.

Plaintiff asserts that all mail must be sealed in his face
to prevent the violation of his First Amendment rights and that
his constitutional rights are violated because "inmates see
outgoing mail first since I am the one putting it out and see
incoming mail and publications last." (Doc. 95 at ¶¶ 27, 29).
Plaintiff argues that the mail policy at Charlotte Correctional
Institution serves no penological interest and is a violation of
the standards of decency. Id. at ¶ 31.

As relief, Plaintiff seeks: a declaration from Defendants
stating that the violations are ongoing and explaining why no
action was taken sooner; a declaration of Plaintiff's rights and
the corrections the postmaster will do to ensure that
Plaintiff's rights are protected; a jury trial on the merits of
Plaintiff's case; all other relief the Court deems necessary;
all fees associated with filing the case; a permanent injunction
stating that the postmaster general must investigate the FDOC
and go to each prison to talk with inmates and submit reports to
the court; an investigation of the Florida Administrative Code
to determine whether the mail and publication rules of the code
provide the FDOC an opportunity for the state officials to steal
Plaintiff's mail and publications; a permanent injunction

stating that the Florida Department of Corrections must meet
with the postmaster general, the Florida Attorney General, the
United States Department of Justice, the United States Senate,
the United States House of Representatives, the governor of
Florida, and the Florida Department of Law enforcement to pass
laws in Florida and in other states to ensure that state inmates
have Title 39 protection; a permanent injunction stating that
the Postmaster General will take complaints from inmates
seriously; a permanent injunction stating that state officials
will no longer handle inmate mail; a permanent injunction that
state officials will take seriously grievances dealing with mail
and publications; a permanent injunction that state officials
will not lie to reject or impound mail and publications; a
permanent injunction stating that the Postmaster General will
formally warn the FDOC that misconduct dealing with mail and
publications will result in serious administrative action; a
permanent injunction stating that the FDOC will no longer place
liens on inmate accounts for legal mail and will still send out
extremely heavy mail; a preliminary injunction stating that
Plaintiff is excused from exhausting his issues until thirty
days after being notified of a deficiency; a refund of all money
spent on stationary, stamps, envelopes, paper, and pens since
January 19, 2004; a permanent injunction stating that officials
from the FDOC may no longer touch Plaintiff's mail; a permanent

injunction stating that there will be a paper trail on all
outgoing legal and privileged mail and on all routine mail; a
permanent injunction requiring the postmaster general to
investigate every prison in the United States to ensure that
"nothing illegal is happening with mail and publications and do
reports etc. every four months." (Doc. 95 at 16-20).

   *c.   Defendant Secretary's Motion to Dismiss*

   Defendant Secretary has filed a motion to dismiss
Plaintiff's Third Amended Complaint on the grounds that: (1)
Plaintiff's claims against FDOC employees are frivolous; (2)
Plaintiff has failed to exhaust his administrative remedies in
regard to his claims that the Florida Department of Corrections
should have different rules concerning inmate mail; (3)
Plaintiff's conclusory allegations regarding FDOC employee
handling of his mail fail to state a claim upon which relief may
be granted; (4) any claim for monetary damages is barred by the
Eleventh Amendment; (5) Plaintiff has failed to state a claim
for the violation of his right to free association under the
First Amendment; and (6) Plaintiff failed to fully disclose his
litigation history and did not comply with Court orders
regarding his numerous "emergency" pleadings (Doc. 145).

## III. ANALYSIS

   To state a claim under § 1983, a plaintiff must allege
that: (1) a violation of a specific constitutional right or

federal statutory provision; (2) was committed by a person acting under color of state law. Doe v. Sch. Bd. of Broward County, Fla., 604 F.3d 1248, 1265 (11th Cir. 2010). Construing Plaintiff's claims in a liberal fashion, the Court determines that he seeks damages and injunctive relief from the defendants because (1) state FDOC officials, rather than federal postal employees, are allowed to handle his mail; (2) he has been charged postage on his legal and non-legal mail; (3) his incoming and outgoing mail has been tampered with or destroyed; and (4) his incoming and outgoing mail is subject to inspection outside of his presence.

### a. Plaintiff's claims for monetary relief against Defendant Secretary and Defendant Postmaster are barred by sovereign immunity

Plaintiff has sued both defendants in their official and individual capacities (Doc. 95 at 1). In his prayer for relief Plaintiff seeks, *inter alia*, monetary relief as compensation for money he has spent on mail supplies and on legal fees pursuing this case (Doc. 95 at ¶ 18). Defendant Secretary argues that, because the Florida Department of Corrections ("FDOC") is an agency of the State of Florida, any claim for monetary damages is barred by the Eleventh Amendment (Doc. 145 at 12). The Court agrees that Plaintiff's claims for monetary damages against either defendant are subject to dismissal.

Plaintiff's official capacity claims for damages against Defendant Secretary are barred by the Eleventh Amendment. "Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court." Gamble v. Fla. Dep't of Health and Rehabilitative Servs., 779 F.2d 1509, 1511 (11th Cir. 1986); Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (citations omitted)). A suit against a state employee in his or her official capacity is deemed a suit against the state for Eleventh Amendment purposes. Will, 491 U.S. at 71; Gamble, 779 F.2d at 1512 (holding that the Eleventh Amendment "will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983.").

As Plaintiff's official capacity claims against Defendant Secretary seek monetary relief against the State of Florida,

which is immune from such relief, Plaintiff's claims for monetary damages against Defendant Secretary in his official capacity are dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915A(b)(2).[3]

Likewise, Plaintiff's official capacity claims against Defendant Postmaster must also be dismissed. Plaintiff's lawsuit against John E. Potter, in his official capacity as the Postmaster General, is a lawsuit against his agency, the United States Postal Service. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court held that a person injured by a violation of his constitutional rights by a federal agent may bring an action for damages against the agent.[4] In this action, Plaintiff seeks to bring a Bivens constitutional claim for damages against

---

[3] Generally, injunctive relief against the State may be available in a suit challenging the constitutionality of a state official's action or the state official's violation of federal law. See Ex Parte Young, 209 U.S. 123 (1908); Edelman v. Jordan, 415 U.S. 651 (1974). However, to the extent that Plaintiff now claims Defendant Secretary is subject to injunctive relief due to a violation of state law, such a claim would be barred by Eleventh Amendment immunity. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984).

[4] Because 42 U.S.C. § 1983 applies only to state, not federal, actors, an action against Defendant Postmaster is not cognizable under § 1983. However, given that Plaintiff filed his complaint as a pro se litigant, the Court will liberally construe his claims against the Postmaster General as an attempt to state a cause of action under Bivens.

14

Defendant Postmaster in his official capacity, which is merely a claim against the United States Postal Service. In F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994), the Supreme Court held that a Bivens action does not lie against a federal agency. The Postal Service is an "independent establishment of the executive branch of the Government of the United States," and it retains its governmental status. U.S.P.S. v. Flamingo Indus.(USA), Ltd., 540 U.S. 736, 744 (2004). Accordingly, the holding of Meyer is applicable to the United States Postal Service and it bars the claims for damages that Plaintiff asserts against the Postal Service in this action.   All claims for damages against Defendant Postmaster General in his official capacity are dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915A(b)(2).

> ### b. Under federal and state rules, prison officials are allowed to collect and deliver inmate mail

Plaintiff asserts that the FDOC officers at the prisons have no authority to deal with incoming mail and that his First Amendment rights are violated by the officers' handling of his incoming and outgoing mail (Doc. 95 at ¶¶ 8,9,11,20).  Plaintiff claims that, because "nothing authorizes state officials to deal with mail[,] the post office is supposed[d] to be passing it out and picking it up from our hand[.]" Id. at ¶ 20. Plaintiff also asserts that the FDOC has no rules for handling mail, and as a

15

result the officers "do as they want with mail and publications." (Doc. 95 at ¶¶ 9, 11).

In response, Defendant Secretary submits that state officials may act as agents of the United States Postal Service regarding delivery of an inmate's mail pursuant to United States postal regulations which clearly allow a correctional institution to deliver mail in accordance with the institution's rules (Doc. 145 at 6-7). Defendant also notes that Florida Statute § 944.09(1)(g) requires the FDOC to promulgate rules relating to the delivery of mail which are set forth in the Florida Administrative Code (Doc. 145 at 7). A review of federal and state regulations regarding the delivery of mail at prisons supports Defendant's position.[5]

Pursuant to section 274.96 of the United States Postal Service Administrative Support Manual:

> ***Authorized personnel of prisons, jails, or other correctional institutions, under rules and regulations promulgated by the institution, may open, examine, and censor***

---

[5] The court can take judicial notice of facts that are not subject to reasonable dispute. Fed. R. Evid. 201(b). These facts are generally known within the territorial jurisdiction of the court or they are capable of ready determination by resort to sources whose accuracy cannot reasonably be questioned. <u>Id.</u> The Court is satisfied that the material contained in the United States Postal Operations Manual, The United States Postal Service Administrative Support Manual, and the Florida Administrative Code contain adjudicative facts that are "not subject to reasonable dispute" and are "capable of accurate and ready determination." <u>Id.</u> Accordingly, the Court takes judicial notice of these documents.

> **mail sent from or addressed to, an inmate of the institution.** An inmate may designate in writing an agent outside the institution to receive his or her mail, either through an authorized address of the agent, if the mail is so addressed, or at the delivery Post Office serving the institution, if the mail is addressed to the inmate at the institution.

§ 274.96 (2009) (emphasis added). Moreover, the Postal Operations Manual of the United States Post Office states that "[m]ail addressed to inmates at institutions is delivered to the institution authorities who, in turn, deliver the mail to the addressee under the institution's rules and regulations." United States Postal Operations Manual § 615.1 (2009).

In addition, contrary to Plaintiff's assertions otherwise, the Florida Administrative Code provides extensive rules regarding how state prisons must handle the inmate's incoming and outgoing legal and routine mail. See Fla. Admin. Code R. 33-210.101 (Routine Mail); 33-210.102 (Legal Mail). Accordingly, any claim based upon FDOC prison official's unauthorized delivery and collection of mail lacks a factual basis and is dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915A(B)(1).

### c.   *Plaintiff is not entitled to free postage*

Plaintiff asserts that his constitutional rights are violated because he is charged postage for first class letters to Florida addresses and because liens are placed on prisoner

17

accounts for the costs of legal mail (Doc. 95 at ¶ 15). Defendant Secretary asserts that any argument by Plaintiff that he is exempt from paying for his legal postage despite having ample funds in his inmate account is "frivolous and merits dismissal as such without further discussion." (Doc. 145 at 8 n.4). The Court concludes that Plaintiff has not stated a claim upon which relief may be granted in regards to the prison charging postage costs for legal or routine mail.

Pursuant to the Florida Administrative Code, an indigent inmate is provided free postage for one first class routine letter per month. Fla. Admin. Code R. 33-210.101(17). Any argument that a prisoner's First Amendment rights are violated by the prison's provision of only one free letter per month for non-legal mail was foreclosed by the Eleventh Circuit in Van Poyck v. Singletary, 106 F.3d 1558, 1559 (11th Cir. 1997) ("[L]imiting indigent prisoners to writing materials and postage for one letter per month is not unconstitutional, since prisoners do not have a right to free postage for nonlegal mail."). Accordingly, because indigent prisoners do not have a right to unlimited free postage for non-legal mail, any claim based upon such an assumption fails as a matter of law and warrants dismissal.

Nor has Plaintiff stated a claim that his constitutional rights were violated due to the prisons' requirement that he pay

for legal postage. In regards to legal mail, the Florida Administrative Code states:

> ***The institution shall furnish postage*** for [legal mail], for pleadings to be served upon each of the parties to a lawsuit and for mailing a complaint to the Florida Bar concerning ineffective assistance of counsel in the inmate's criminal case ***for those inmates who have insufficient funds to cover the cost of mailing the documents at the time the mail is submitted to the mailroom***, but not to exceed payment for the original and two copies except when additional copies are legally required.

§ 33-210.102(10)(a)(emphasis added). The Code further states that a lien will be placed on an inmate's account "to recover postage costs when the inmate receives funds." Id.

In Bounds v. Smith, the United States Supreme Court determined that "indigent inmates must be provided at state expense with paper and pen to draft legal documents[,] with notarial services to authenticate them, and with stamps to mail them." 430 U.S. 817, 824-25 (1977), overruled on other grounds, Lewis v. Casey, 518 U.S. 343, 354 (1996). However, Plaintiff has not alleged that he was indigent at the time he filed his complaint or at any relevant time he mailed a legal letter.[6] See Hargrove v. Henderson, Case No. 95-1601-CIV-T-17A, 1996 WL 467516 at *10 (M.D. Fla. 1996) ("[I]t is beyond question that

---

[6] Plaintiff wrote his original Complaint on September 3, 2010 (Doc. 1). At the time Plaintiff filed his first complaint, he had $5,967.03 in his prisoner account. See Doc. 32-1.

Plaintiff has no right to free postage when he has the financial ability to pay his own way."). Moreover, § 33-210.102(10)(a) does not deny any prisoner the right to send or receive legal mail; rather, all legal mail is accepted for posting and a lien is created against the prisoner's account for the costs of mailing legal documents.  The FDOC has fulfilled its affirmative duty under <u>Bounds</u> to provide indigent prisoners access to the courts. <u>See</u> <u>Hoppins v. Wallace</u>, 751 F. 3d 1161, 1162 (11th Cir. 1985)(determining that the rights of prisoners must be balanced with budgetary constraints and noting that states are not required "to pay the postage on every item of legal mail each and every prisoner wishes to send.")(quoting <u>Twyman v. Crisp</u>, 584 F.2d 352, 259 (10th Cir. 1978)).  Accordingly, Plaintiff's claim that his constitutional rights were violated because the prison did not provide him with free legal postage warrants dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915A(b)(1).

> **d.  *Plaintiff has not stated a claim for a constitutional violation of his right to send or receive mail***

Plaintiff generally asserts that "mail and publication violations [have] been going on for years" at Charlotte Correctional Institution (Doc. 95 at ¶ 9).  He also asserts that "[t]he mailroom in the Florida D.O.C. lies to reject or impound mail and publications[.]" <u>Id.</u> at ¶ 10. Plaintiff alleges that

the officials mishandle his outgoing mail by throwing it away, taking its contents out, putting foreign liquids on it, tearing the papers in the envelope and scratching his name off with a pen and putting another name on the letter (Doc. 95 at ¶ 18). He states that he has "experience[d] this on several occasions," but provides no specific dates or instances of mail tampering (Doc. 95 at ¶ 10).

Defendant Secretary argues that Plaintiff has not stated a claim under the standards set forth in Ashcroft v. Iqbal because he makes nothing but vague and conclusory allegations against officials at the prison (Doc. 145 at 10). Defendant Secretary argues that Plaintiff has not provided any specific instances or dates of alleged tampering or identified any official who has done anything improper with Plaintiff's mail (Doc. 145 at 11). Finally, the defendant asserts that Plaintiff's lack of detail "forecloses the possibility of responding to Plaintiff's Third Amended Complaint with an Answer, as Plaintiff's general conclusory allegations cannot be meaningfully investigated or verified by Defendant Crews." (Doc. 145 at 11). The Court agrees that Plaintiff has not stated a claim upon which relief may be granted.[7]

---

[7] To the extent that Plaintiff now asserts that the mere handling of his mail by a prison official amounts to "tampering," such a claim is without merit because federal and state law

        1. *Plaintiff has not satisfied the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure*

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although Plaintiff is not required to provide detailed factual allegations, his second amended complaint fails to provide enough facts, which, if accepted as true, would raise his right to relief above a speculative level or state a plausible claim for relief. See <u>Twombly</u>, 550 U.S. at 555; <u>Iqbal</u>, 556 U.S. at 678. Plaintiff's claims against any particular person, much less Defendant Secretary and Defendant Postmaster General, are too conclusory and vague to satisfy Rule 8 or the pleading standards set forth in <u>Twombly</u> and <u>Iqbal</u>. Indeed, Plaintiff fails to allege a single specific unconstitutional act committed by any specific individual.

        2. *Plaintiff has not stated a claim for respondeat superior liability against Defendant Secretary or Defendant Postmaster*

Plaintiff generally alludes that prison officials have destroyed, damaged, or otherwise improperly handled his mail (Doc. 195 at ¶ 18). To the extent that Plaintiff now argues that the defendants are vicariously liable for the actions of the

---

specifically provide for prison officials to handle inmate mail. <u>See</u> discussion <u>supra</u> Part III(b).

prison officials, such a claim fails as a matter of law. Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based upon *respondeat superior* liability. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295 (11th Cir. 2006); Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978)(doctrine of respondeat superior is inapplicable to § 1983 actions). Instead, supervisors can be held personally liable only when: (1) the supervisor personally participates in the alleged constitutional violation; or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Id. Plaintiff does not claim that either defendant was personally involved in tampering with his mail. Therefore, Plaintiff must show a "causal connection" between the defendants' actions and the alleged constitutional violations. Such a causal connection may be established by showing that a supervisory official implemented, or allowed to continue, an official policy or unofficial policy or custom under which the violation occurred. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). Plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy

of depriving inmates of their constitutional rights." <u>Title v.</u>
<u>Jefferson County Comm'n</u>, 10 F.3d 1535, 1541-42 (11th Cir. 1994).

Plaintiff does not point to a specific custom or policy
that deprived him of his constitutional rights, but argues
instead that "all mail needs to be opened in the presence of the
inmate to prevent mail and publication theft and lies on inmates
by the employees since I have a right to association in
compliance with the U.S. Constitution." (Doc. 95 at ¶ 14).
Plaintiff also makes the general assertion that "[a]ll mail must
be sealed in [sic] me and other inmates face to discontinue the
violations of my U.S. Constitution 1st Amendment" (Doc. 95 at ¶¶
14, 27). Neither assertion implicates an unconstitutional policy
of the FDOC or the United States Post Office. Specifically, the
Florida Administrative Code has two provisions that deal with
FDOC official's ability to inspect mail.

> i.   Under Florida Administrative Code Rule 33-
>      210.102(8)(d), all legal mail must be opened
>      in the presence of the recipient inmate

Florida Administrative Code Rule 33-210.102(8)(d)
specifically provides that "[a]ll incoming legal mail will be
opened in the presence of the inmate to determine that the
correspondence is legal mail and that it contains no
unauthorized items. Only the signature and letterhead may be
read." The Code further states that "[i]nmates shall present
all outgoing legal mail to the mail collection representative to

determine, in the presence of the inmate, that the correspondence is legal mail, bears that inmate's return address and signature, and that it contains no unauthorized items." Fla. Admin. Code R. 33-210.102(8)(g). Accordingly, to the extent Plaintiff alleges that the FDOC rules regarding prison handling of legal mail are unconstitutional because the rules do not require that the mail be handled in the presence of an inmate, such a claim lacks a factual basis and is without merit. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Al-Amin v. Smith, 511 F.3d 1317 (11th Cir. 2008).

Moreover, "[w]hile a prisoner has a right to be present when his legal mail is opened . . . an isolated incident of mail tampering is usually insufficient to establish a constitutional violation . . . Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citations and quotations omitted); Al-Amin v. Smith, 511 F.3d 1317, 1334 (11th Cir. 2008)(a state prison's "pattern and practice" of opening attorney mail outside the inmate's presence impinges upon the inmate's right to freedom of speech). Plaintiff has not provided facts of any specific instance in which his own, or any other inmate's, legal mail was opened outside of his or the inmate's presence, much less a "custom or policy of depriving inmates of their constitutional rights" in

this regard. _Tittle_, 10 F.3d at 1541-42. Because Plaintiff fails to allege that either defendant "regularly and unjustifiably" opened his legal mail outside of his presence or otherwise interfered with his legal mail, he has not stated a constitutional claim for a violation of his First Amendment right to send or receive legal mail.

> *ii.  Because Plaintiff has no constitutional right to send or receive non-legal mail without FDOC review, Florida Administrative Code Rule 33-201.101(5) is not unconstitutional*

Next, in contrast to the Florida Administrative Code provision pertaining to legal mail, Rule 33-201.101(5) states that "[a]ny routine mail sent or received shall be opened, examined, and is subject to being read by a designated employee."  The Code specifically lists items that may not be included in incoming or outgoing routine mail including correspondence that encourages or instructs in the commission of criminal activity or material that may be considered obscene. Fla. Admin. Code R. 33-201.101(11).

Prisoners have a First Amendment right to send and receive mail. _See_ _Thornburgh v. Abbot_, 490 U.S. 401, 407 (1989). However, a prison may adopt regulations that impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." _Turner v. Safley_, 482 U.S. 78, 89 (1987).  The _Turner_ standard

26

applies to regulations concerning incoming mail received by prisoners. Thornburgh, 490 U.S. at 413. The Court concludes that the FDOC practice of inspecting a prisoner's non-legal incoming and outgoing mail is reasonably related to a penological interest under Turner.

Four factors are considered in determining the reasonableness of a prison regulation: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an 'exaggerated response' to prison concerns." Turner, 482 U.S. at 89-90 (citations omitted).

Notably, Rule 33-201.101(5) does not prohibit inmates from sending or receiving non-legal mail, it only requires that the mail be inspected for illegal or otherwise prohibited material. However, Plaintiff does not argue that the rules prohibiting objectionable material are unconstitutional; rather, he argues that the prison officials should never inspect his non-legal

mail outside his presence.  Accordingly, it is to this assertion that the Court will apply the Turner test.

A prison has a legitimate security interest in opening and inspecting incoming mail to inspect for contraband or other potentially damaging material.  See Pell v. Procunier, 417 U.S. 817, 823 (1974)("[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.").  Requiring each item of outgoing or incoming non-legal mail to be sealed or opened in front of the prisoner would increase the burden on prison staff and "make it more difficult for the already overworked staff and inspectors to accomplish their other responsibilities in ensuring a safe and secure prison environment." Perry v. Secretary, Fla. Dep't of Corr., 664 F.3d 1359, 1366 (11th Cir. 2011).  Finally, neither Rule 33-201.101(5) nor the prison's practice of inspecting non-legal mail outside of the inmate's presence is an "exaggerated response" to prison concerns. Plaintiff has not pointed "to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." Overton v. Bazzetta, 539 U.S. 126, 136 (2003) (citing Turner, 482 U.S. at 90-91).  Accordingly, neither Rule 33-201.101(5), nor the inspection of an inmate's non-legal mail

outside his or her presence, violates a prisoner's constitutional rights under the test set forth in Turner.

Moreover, although the constitutionality of inspecting non-legal mail outside of an inmate's presence has not been addressed by the Eleventh Circuit, other circuit courts have held that, while prison officials are constitutionally required to open legal mail in the presence of the recipient inmate, no such requirement exists where the identification of the sender does not give rise to a reasonable belief that such material is legal mail and there is no marking indicating that such mail is confidential. See, e.g., Gassler v. Wood, 14 F.3d 406, 408 n.5 (8th Cir. 1994)(prison officials do not commit constitutional violations by opening non-legal mail outside of an inmate's presence); Martin v. Brewer, 830 F.2d 76, 77 (7th Cir. 1987)(as a general rule, inmate mail can be opened and read outside the inmate's presence unless it is marked as legal mail); Altizer v. Deeds, 191 F.3d 540 (4th Cir. 1999)(the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests and therefore, does not violate the First Amendment); see also Witherow v. Paff, 52 F.3d 264, 265-66 (9th Cir. 1995) (upholding inspection of outgoing mail); Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991)(upholding inspection

29

of incoming mail); Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986)(upholding inspection of outgoing and incoming mail).[8]

Plaintiff has not alleged that either defendant was personally involved in any specific instance of mail tampering. Nor has Plaintiff shown that either defendant implemented, or allowed to continue, an unconstitutional or illegal policy regarding the handling of inmate mail.  Accordingly, Plaintiff's claims against Defendant Secretary and Defendant Postmaster are dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 8, 12(b)(6); 28 U.S.C. § 1915A(b)(1).

---

[8] Although Plaintiff does not attack any other specific provision of the Florida Administrative Code regulating his incoming and outgoing mail, the Court notes that the Florida mail provisions have generally been recognized as satisfying the Turner standards. See, e.g., Perry v. Secretary, Florida Dep't of Corr, 664 F.3d 1359 (11th Cir. 2011) (FDOC rule prohibiting inmates from soliciting pen pals was rationally related to a legitimate penological interest and so did not violate the First Amendment); Daniels v. Harris, Case No. 3:11-cv-45(CAR), 2012 WL 3901646 (M.D. Ga. 2012) (postcard-only mail policy did not violate constitutional rights); Wood v. Vartianen, Case No. 2:02-cv-626-29DNF, 2005 WL 2291723 (M.D. Fla. 2005) (FDOC rule providing for the exclusion of sexually explicit photographs mailed to a state prison inmate was reasonable and satisfied the Turner standards); Richards v. England, Case No. 2:07-cv-758-29SPC, 2008 WL 5110793 at *1, 5 (M.D. Fla. 2008) (no constitutional violation on rule prohibiting photographs depicting scantily clad women); Hall v. Singletary, 999 F.2d 1537 (11th Cir. 1993) (prison rules prohibiting correspondence between inmates at different facilities does not violate the Turner rules).

> ### e.   Plaintiff's Third Amended Complaint is subject to dismissal due to Plaintiff's failure to reveal his prior litigation history

Defendant Secretary urges that Plaintiff's complaint should be dismissed for abuse of the judicial process based upon Plaintiff's failure to reveal his litigation history on his civil rights complaint form and because of his willful non-compliance with orders of this Court (Doc. 145 at 15-16).[9]

---

[9] Defendant Secretary argues that Plaintiff's insistence on filing "emergency" pleadings despite the Court's orders instructing Plaintiff not to do so unless a true or legal emergency exists, warrants dismissal of Plaintiff's Third Amended Complaint for abuse of the judicial process (Doc. 125 at 3, 21). Specifically, Defendant notes that Plaintiff was directed to file an amended complaint on the pre-printed civil rights complaint form (Doc. 44). Plaintiff did not comply, instead filing an "Emergency Amended Complaint" on February 3, 2011 (Doc. 51). The Court struck the complaint, determined that the complaint did not constitute an emergency, and warned Plaintiff that "improperly designating a motion or pleading as an 'emergency' may result in sanctions." (Doc. 54). On May 13, 2011, Plaintiff filed an "Emergency Motion to Amend/Correct" his amended complaint (Doc. 58). Plaintiff's motion to amend was granted, but the Court noted that the motion was not an emergency, and Plaintiff was cautioned that he would be sanctioned in the future if he continued to designate his pleadings as "emergency" filings (Doc. 59). Plaintiff filed another "Emergency Motion" on August 1, 2011, seeking copies of the record (Doc. 66). The Court directed the Clerk to strike the motion as an improper "emergency" filing and as duplicative of another motion (Doc. 70). Plaintiff filed an "Emergency Notice of Inquiry" on June 11, 2012 and a second "Emergency Notice of Inquiry" on June 18, 2012 (Docs. 87, 89). Plaintiff filed an "Emergency Belated Motion" for an extension of time to file an amended complaint on June 29, 2012 (Doc. 91) and "Emergency Notice to the Clerk" on August 13, 2012 (Doc. 93). Plaintiff filed an "Emergency Notice of Change of Address" on December 26, 2012 (Doc. 99). Plaintiff was again cautioned to only designate pleadings as an emergency when there is a true emergency (Doc. 100). Plaintiff filed "Emergency" notices to the

Plaintiff was ordered to respond to this particular ground for dismissal by August 16, 2013, but has failed to do so (Doc. 168).

Plaintiff signed his Third Amended Complaint on March 23, 2012 (Doc. 95). Plaintiff was questioned in Section III(A) of the complaint form whether he had initiated other lawsuits in federal court dealing with similar facts or otherwise relating to his conditions of imprisonment. Id. at 3. Plaintiff checked "no", but listed on the complaint form Middle District of Florida Case No. 3:11-cv-818-MMH-TEM. Id. However, Plaintiff failed to report that he had also filed Middle District of Florida Case Nos. 3:11-cv-383-TJC-MCR and 2:10-cv-705-CEH-DNF and Southern District of Florida Case No. 0:11-cv-61243-WPD.

Plaintiff also did not honestly answer Section III(D) of the Complaint which asked whether he had initiated lawsuits or appeals in federal court that were dismissed as frivolous,

---

Clerk on January 28, 2013, February 8, 2013, March 11, 2013, March 18, 2013, and March 25, 2013 (Docs. 107, 108, 109, 112, 116). He filed an "Emergency" notice to the U.S. Marshal's Office on March 19, 2013 (Doc. 115). Each of the notices were stricken due to Plaintiff's improper labeling of the notices as an emergency (Doc. 119).

Although the Court notes that Plaintiff's continued designation of his pleadings as "emergency" in the absence of a true or legal emergency indicates a measure of vexatious conduct, the Court declines to dismiss his Third Amended Complaint on this ground. See Flaksa v. Little River Marine Const. Co., 389 F.2d 885 (5th Cir. 1968) (recognizing that dismissal of a complaint for failure to abide by court orders is a drastic remedy limited to only the most vexatious conduct).

malicious, or failed to state a claim upon which relief may be granted (Doc. 95 at 3). Plaintiff wrote "N/A" in response to this question even though he has had four actions or appeals in federal court dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Southern District of Florida Case No. 0:11-cv-60762 was dismissed as barred by the statute of limitations; Southern District of Florida Case No. 0:11-cv-60762 was dismissed as duplicative; Southern District of Florida Case No. 0:11-cv-61243 was dismissed for failure to state a claim upon which relief could be granted. On July 27, 2011, the Eleventh Circuit dismissed Plaintiff's interlocutory appeal as frivolous (Case No. 10-14910-C; Doc. 34).

Providing false information to the court is, in-and-of itself, a valid ground for dismissing a complaint. See Redmon v. Lake County Sheriff's Office, 414 F. App'x 221, 226 (11th Cir. 2011)(prisoner's failure to disclose previous lawsuit constituted abuse of judicial process warranting sanction of dismissal of his pro se § 1983 action); see also Hood v. Tompkins, 197 F. App'x 818, 819 (11th Cir. 2006)(upholding dismissal based on abuse of judicial process for failing to disclose prior litigation and holding that "the district court was correct to conclude that to allow [plaintiff] to then acknowledge what he should have disclosed earlier would serve to

33

overlook his abuse of the judicial process."); <u>Shelton v. Rohrs</u>, 406 F. App'x 340, 341 (11th Cir. 2010)(upholding district court's dismissal noting that "[e]ven if [Plaintiff] did not have access to his materials, he would have known that he filed multiple previous lawsuits."); <u>Young v. Secretary Fla. for Dep't of Corr.</u>, 380 F. App'x 939, 941 (11th Cir. 2010) (same);

In <u>Redmon</u>, the Eleventh Circuit affirmed the district court's dismissal of a complaint based upon the plaintiff's misrepresentation of his litigation history, noting abuse of the judicial process. 414 F. App'x at 225. The court stated that "[u]nder 28 U.S.C. § 1915, "[a] finding that the plaintiff engaged in bad faith litigiousness or manipulative tactics warrants dismissal." <u>Id.</u> (citing <u>Attwood v. Singletary</u>, 105 F.3d 610, 613 (11th Cir. 1997)). The Eleventh Circuit explained that a district court "may impose sanctions if a party knowingly files a pleading that contains false contentions," and although *pro se* pleadings are held to less stringent standards, "a plaintiff's *pro se* status will not excuse mistakes regarding procedural rules." <u>Id.</u> (citing <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993)). Finding no abuse of discretion, the Eleventh Circuit noted that plaintiff failed to disclose a prior lawsuit, but had been afforded an opportunity to show cause, just as in the present case, as to why his complaint should not be dismissed. The Eleventh Circuit affirmed the district court's

decision in "concluding that Plaintiff's explanation for his failure to disclose the lawsuit-that he misunderstood the form-did not excuse the misrepresentation and that dismissal without prejudice was a proper sanction." Id. at 226.

In the instant case, Plaintiff did not answer this Court's order to show cause, but did aver in an unrelated motion for an extension of time that he could not respond to the Court's show cause order without a copy of his original complaint (Doc. 173).[10]  This argument is unavailing.  In Shelton v. Rohrs, the Eleventh Circuit affirmed a district court's dismissal of a complaint without prejudice under 28 U.S.C. § 1915(e)(2)(B)(i) for abuse of the judicial process because of the plaintiff's failure to disclose his litigation history. 406 F. App'x at 340. The court noted that "[e]ven if Shelton did not have access to his materials, he would have known that he filed multiple previous lawsuits." Id. at 341; see also Pinson v. Grimes, 391 F. App'x 797, 799 (11th Cir. 2010)("Even if [Plaintiff] did not have access to his legal materials when he filed his complaint, he would have known he had filed two other cases within the previous month.").  Likewise, Plaintiff knew at the time he filed his Third Amended Complaint that he had filed several complaints in federal courts and had several other cases

---

[10] A courtesy copy of Plaintiff's original complaint was mailed to him on August 12, 2010 (Doc. 170).

dismissed as frivolous, malicious, or as failing to state a claim upon which relief may be granted. In fact, Plaintiff's interlocutory appeal to the Eleventh Circuit (Case No. 10-14910) in the instant case was dismissed as frivolous only eight months prior to Plaintiff writing his Third Amended Complaint (Doc. 65).

Accordingly, in addition to dismissing Plaintiff's Third Amended Complaint for failure to state a claim, the complaint is due to be dismissed for Plaintiff's failure to honestly provide the Court with his litigation history.

## IV. CONCLUSION

In sum, the Court **ORDERS** as follows:

1. The Motion to Dismiss filed by Defendant Secretary, Department of Corrections (Doc. 145) is **GRANTED**.

2. All official capacity claims for monetary damages against Defendant Secretary, Department of Corrections and Defendant Postmaster General John E. Potter are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915A(b)(2) because they seek monetary relief from defendants who are immune from such relief.

3. All other claims against Defendant Secretary, Department of Corrections and Defendant Postmaster General John E. Potter are **DISMISSED** pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

4.    With no remaining claims or defendants, this case is **DISMISSED.**

5.    Alternatively, Plaintiff's Third Amended Complaint is dismissed as a sanction for abuse of the judicial process.

6.    The **Clerk of the Court** is directed to terminate all pending motions, to close this case, and to enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida, this ___19th___ day of September, 2013.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA:  OrlP-4  9/11/13
Copies to: All parties of record